■ GRACE LAPPIN, Appellant, v MARGERY A. GREENBERG et al., Respondents. [825 NYS2d 18]—

Judgment, Supreme Court, New York County (Walter B. Tolub, J.), entered July 25, 2005, which, to the extent appealed from as limited by the briefs, granted defendants' pre-answer motion to dismiss plaintiff's first cause of action, alleging legal malpractice, for failure to state a cause of action, unanimously reversed, on the law, without costs, the motion denied and the first cause of action reinstated.

This dispute arises out of a divorce action commenced in 1991. During the proceedings, plaintiff was represented by several different attorneys, ultimately retaining defendant Margery A. Greenberg in June 1996. In November 1998, plaintiff and her then husband, William Warhurst, entered into a stipulation prepared by said defendant resolving all issues between them. The agreement provides that each party waives any claim for maintenance and any interest in any individual retirement account the other might have established. The agreement acknowledges that when the divorce action was commenced, William Warhurst "was the title owner of a 401K Plan and Employee Stock Option Plan Account from US Trust" (the Plan), and states that he agreed, within 10 days, to "request that all monies in The Plan be deposited into his attorney's escrow account." Within 10 days after receipt of the funds, his attorney was to distribute 80% of the balance, after payment of taxes, to plaintiff and an additional $4,000 to her attorneys for legal expenses. The stipulation also provides that plaintiff waives her right to a 401 (k) plan owned by Warhurst. The terms of the stipulated agreement are incorporated into a judgment of divorce entered in August 1999.

The complaint alleges that, prior to submitting a proposed judgment of divorce, Ms. Greenberg failed to make appropriate inquiries to determine the Plan's requirements for distribution of the funds or whether the proposed division of proceeds was even permissible under the Plan.

On August 13, 1999, a judgment of divorce was granted. However, the judgment did not contain language sufficient to constitute a qualified domestic relations order (QDRO) acceptable to the Plan administrator for the distribution of the pension funds. In or about December 1999, Ms. Greenberg was notified that the Plan administrator was unable to distribute its proceeds because there was no QDRO and the intended distribution violated its terms.

In or about February 2000, Ms. Greenberg submitted the requisite QDRO, but failed to address whether the proposed distribution was permitted under the terms of the Plan. In or about October 2000, the pension administrator again notified her that the proposed distribution could not be approved because it violated the Plan's terms. She was also informed that the Plan and Warhurst's 401 (k) were a single plan, and not two separate plans as she had allegedly advised plaintiff. She also learned that Warhurst had another retirement plan, the "Employee Retirement Plan of US Trust Company of New York and affiliated companies" (ERP).

Ms. Greenberg and defendant Philip C. Segal formed defendant law firm Segal & Greenberg, LLP, in 2001. In or about November 2001, defendants obtained an order modifying the stipulation of settlement and judgment of divorce so as to give plaintiff 100% of the Plan balance. In September 2003, defendants finally obtained a QDRO directing the distribution of the entire proceeds of the Plan to plaintiff. However, defendants allegedly did not serve that order on the pension administrator until on or about March 1, 2004. It is further alleged that defendants failed to advise either plaintiff or the court of the existence of Warhurst's ERP.

The complaint states that, at the time the parties entered into the stipulation, plaintiff's interest in the plan was in excess of $300,000 and that, by the time the plan funds were transferred in March 2004, the value of her interest had fallen to approximately $131,000.

Plaintiff commenced this action for legal malpractice and breach of contract. The first cause of action alleges that "had defendants acted with reasonable professional diligence in effecting the division of marital assets, plaintiff would have received from the US Trust ESOP in excess of [$300,000] in

pension funds, which she would have invested in a more suitable retirement plan, and thus been able to avoid the losses sustained by US Trust between May, 1999 and March, 2004." Supreme Court dismissed the malpractice cause of action, holding that plaintiff's damages were speculative and that the decline in value of the securities held by the Plan and not defendants' negligence was the cause of plaintiff's loss.

Defendants predicate dismissal on plaintiff's inability to state the amount of her damages and, thus, her failure to establish that they are " 'actual and ascertainable' " (quoting *Zarin v Reid & Priest*, 184 AD2d 385, 387-388 [1992]). Particularly, defendants maintain that whether plaintiff would have had the wherewithal to reinvest the money so as to avoid a loss in principal due to the decline in the stock market "is premised upon multiple hypothetical propositions" and is not susceptible of proof (citing *Phillips-Smith Specialty Retail Group II v Parker Chapin Flattau & Klimpl*, 265 AD2d 208, 210 [1999], *lv denied* 94 NY2d 759 [2000] [summary judgment]). Plaintiff responds that to withstand this motion to dismiss at the pleading stage, she need only set forth allegations concerning defendants' lack of diligence that give rise to a reasonable inference of damages (citing, inter alia, *Tenzer, Greenblatt, Fallon & Kaplan v Ellenberg*, 199 AD2d 45 [1993]).

This Court has consistently applied the *Tenzer* rule. To survive a CPLR 3211 (a) (7) pre-answer dismissal motion, a pleading need only state allegations from which damages attributable to the defendant's conduct may reasonably be inferred (*InKine Pharm. Co. v Coleman*, 305 AD2d 151, 152 [2003]; *Kocak v Egert*, 280 AD2d 335, 336 [2001]; *IMO Indus. v Anderson Kill & Olick*, 267 AD2d 10, 11 [1999]; *cf. Kahan Jewelry Corp. v Rosenfeld*, 295 AD2d 261 [2002]). *IGEN, Inc. v White* (250 AD2d 463 [1998], *lv denied* 92 NY2d 818 [1998]), relied upon by defendants, is readily distinguishable, merely illustrating the essential requirement that a tort claim state actual, not speculative, damages. In any event, *IGEN* involved a motion for summary judgment (CPLR 3212) based on the failure to state a cause of action (CPLR 3211 [a] [7]), not a pre-answer dismissal motion, and the action had been pending for seven years, during which time plaintiff had been unable to establish that its patented process possessed any commercial value so as to infer damages from the attorney's failure to register it (*IGEN*, 250 AD2d at 466).

In the context of a motion to dismiss directed at the sufficiency of the pleadings pursuant to CPLR 3211, the allegations of the complaint are accorded their most favorable intendment

(*Arrington v New York Times Co.*, 55 NY2d 433, 442 [1982], *cert denied* 459 US 1146 [1983]; *see Dulberg v Mock*, 1 NY2d 54, 56 [1956]). So construed, the complaint sufficiently asserts that defendants' inordinate delay in effecting the stipulated transfer of funds resulted in a loss of principal attributable to defendants' lack of professional diligence. For purposes of this appeal, we reject the intimation that plaintiff must be treated as an investor who implicitly assumed the market risk inherent in an investment vehicle such as the Plan (*cf. National Union Fire Ins. Co. of Pittsburgh, Pa. v Christopher Assoc.*, 257 AD2d 1, 12 [1999]). Plaintiff agreed to accept the proceeds of the Plan, not the investments it represented. Moreover, it is clear that the stipulated agreement contemplated a prompt transfer and distribution of funds. Finally, at this stage of the proceedings, we are not prepared to rule that defendants' failure to fix the value of the Plan in the stipulated agreement or otherwise insulate plaintiff from the market risk attendant upon a delay in transfer and distribution of the proceeds cannot be deemed a lapse in the exercise of professional diligence. Concur—Tom, J.P., Saxe, Friedman, Catterson and McGuire, JJ.