■ Seth Fielding, Appellant, v Stephanie Kupferman et al., Respondents. [885 NYS2d 24]—

Judgment, Supreme Court, New York County (Walter B. Tolub, J.), entered January 9, 2009, dismissing the complaint, and bringing up for review an order, same court and Justice, entered January 29, 2009, which granted defendants' motion to dismiss the complaint for failure to state a cause of action, unanimously reversed, on the law, without costs, and the complaint reinstated. Appeal from the order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

In this legal malpractice action, defendant law firm represented plaintiff in connection with a divorce action commenced by plaintiff's wife; defendant Stephanie Kupferman handled the matter. Based on Kupferman's advice, plaintiff entered into a stipulation of settlement dated April 30, 2007 that was subsequently incorporated into the judgment of divorce. The stipulation provided, among other things, that in exchange for the marital residence, a cooperative apartment, plaintiff would pay his wife the sum of $1,597,013 by relinquishing any claim to the funds in accounts in her name, making a payment of $1,200,000, and paying the balance in monthly installments; the $1.2 million payment was to be made "within 30 days after the execution [of the stipulation of settlement] . . . in *immediately available* funds" (emphasis added).

Plaintiff, having discussed the stipulation and its contents with Kupferman, planned to obtain a mortgage or home equity line of credit on the cooperative apartment prior to the divorce becoming final. The complaint alleges that "although there was substantial equity in the apartment, this was an unrealistic contemplation because without a finalized divorce, no lender would give plaintiff the money that he needed to effectuate the settlement." Plaintiff did not become aware that he would be unable to obtain a mortgage or home equity line of credit until after he signed the settlement stipulation. The complaint further alleges that plaintiff signed the document "[a]s a result of defendants' failure to give [him] proper advice under the circumstances—or to advise him to get advice elsewhere."

According to the complaint, upon being unable to obtain a

mortgage or home equity line of credit, plaintiff informed defendants "that the settlement was unrealistic and should have been better explained to him" but "they refused to attempt to renegotiate the settlement, or to apply to the court for relief therefrom." Defendants advised him to "stop wasting time and get a mortgage" and his wife's counsel threatened to obtain a judgment against him.

In order to comply with the stipulation, plaintiff ultimately withdrew the money from a retirement account resulting in a "huge tax burden." The complaint asserts that defendants failed to advise plaintiff that withdrawing assets from that account, even for the purpose of giving them to his wife to satisfy the divorce judgment, would result in a significant tax burden. Additionally, it asserts that not only did defendants fail to provide the proper advice, they were apparently unaware of the tax consequences. Thus, the complaint states: "[w]hen plaintiff attempted to withdraw half of his retirement account to comply with the terms of the settlement agreement, and was unable to withdraw the entire amount because of the tax burden, Ms. Kupferman was so surprised she called plaintiff's broker to ask why." It further states that by that point, "time was running out" so "plaintiff had to swallow the tax burden, beg and borrow to cover the deficit, obtain an interest-only mortgage after the divorce . . . became final, and then bring this lawsuit."

After plaintiff commenced this action and filed an amended complaint, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing that the stipulation that was incorporated into the divorce judgment constituted documentary evidence refuting conclusively plaintiff's claim because he represented therein that the funds were "immediately available." Defendants maintained that plaintiff's "attorney should [not] be held responsible for [his] inability to adequately finance the divorce settlement." They further maintained that plaintiff failed to plead that Kupferman's purported negligence was the proximate cause of his damages or that he suffered actual and ascertainable damages.

"[A]n action for legal malpractice requires proof of the attorney's negligence, a showing that the negligence was the proximate cause of the injury, and evidence of actual damages. In order to survive dismissal, the complaint must show that but for counsel's alleged malpractice, the plaintiff would not have sustained some ascertainable damages" (*Russo v Feder, Kaszovitz, Isaacson, Weber, Skala & Bass*, 301 AD2d 63, 67 [2002] [citations omitted]). Here, plaintiff alleges that, but for defendants' malpractice in advising him to sign the stipulation

of settlement without advising him properly of the tax consequences arising out of his withdrawal of money from retirement accounts, he would have avoided actual ascertainable damage, i.e., the tax liability resulting from the withdrawal of the money. He further alleges that defendants were not knowledgeable with regard to the tax consequences and failed to advise him to obtain tax advice from another source.

"[A]n attorney is obligated to know the law relating to the matter for which he/she is representing a client and it is the attorney's duty, 'if he has not knowledge of the statutes, to inform himself, for, like any artisan, by undertaking the work, he represents that he is capable of performing it in a skillful manner' " (*Reibman v Senie*, 302 AD2d 290, 291 [2003], quoting *Degen v Steinbrink*, 202 App Div 477, 481 [1922], *affd* 236 NY 669 [1923]). Defendants assert that they should not be held liable for plaintiff's representation that the money was immediately available when it was not. Indeed, they argue that plaintiff should be "judicially estopped from now alleging that he suffered damages" because he signed the stipulation stating that the funds were available immediately and now claims "a contrary position, to wit, that he incurred damages by not having funds immediately available." Thus, defendants submitted the stipulation of settlement and divorce judgment in support of their motion to dismiss, arguing that it is documentary evidence which refutes conclusively plaintiff's claim.

Defendants' documentary evidence not only fails to refute plaintiff's allegations conclusively, it *supports* plaintiff's claim of malpractice in a key respect. The stipulation identifies four accounts in plaintiff's name representing his financial assets and states that $894,530 of the total ($1,258,854) is in a "Profit Sharing Keogh Account," a retirement account that has specific rules regarding the withdrawal of funds and requires that significant taxes be paid upon preretirement withdrawal. Thus, the stipulation makes clear that the sum of money that plaintiff needed to comply with its requirements was not "immediately available," yet defendants advised plaintiff to sign it. Given that the ground for plaintiff's claim of malpractice is apparent from the face of the stipulation, the allegations contained in the complaint are not conclusory and plaintiff properly has pleaded a cause of action for legal malpractice.

The Court of Appeals recently stated that "the conclusiveness of [an] underlying agreement does not absolutely preclude an action for professional malpractice against an attorney for negligently giving to a client an incorrect explanation of the contents of a legal document" (*Bishop v Maurer*, 9 NY3d 910,

911 [2007]). Although the Court found that the complaint in *Bishop* was devoid of any nonconclusory allegations that incorrect legal advice was given to the plaintiff, the facts of that case are distinguishable.

The documents at issue in *Bishop* were estate planning instruments executed by the plaintiff who believed that he was giving his wife a life estate and was not limiting his access to his life savings (*Bishop*, 33 AD3d 497, 501 [2006], *affd* 9 NY3d 910 [2007]). He alleged that the defendant attorneys wrongly advised him of the meaning of the estate planning documents, that he " 'was not advised that those documents limited his right to alter his dispositions of' " his property, and that he " 'was not informed, and was not aware' when he executed the trust and the agreement that his wife could do as she pleased with his assets, to the detriment of his own issue, if he predeceased her" (*id.*). The documents signed by the plaintiff and his wife each contained an acknowledgment that both parties read and understood the documents and waived any conflict of interest due to their joint reliance on the same attorneys in executing the estate documents (*id.* at 498-499). On their face, the documents were proper and did not establish that the defendants had provided improper advice or engaged in any act of malpractice. This Court found that the "plaintiff's allegations that defendants attorneys failed to perceive that they had a conflict of interest, and failed to inform him as to the provisions of the estate planning instruments he executed, do not state a cognizable claim for legal malpractice in view of the clear and unambiguous documentary evidence" (*id.* at 498). The Court of Appeals affirmed, finding that the plaintiff's allegations that incorrect advice was given were conclusory (9 NY3d at 911).

Here, not only are the allegations of the giving of incorrect advice sufficient and nonconclusory, as noted above, the documentary evidence provides significant support for plaintiff's claim. It clearly establishes that the overwhelming majority of plaintiff's funds, including the amount necessary to satisfy the obligation to his wife, were not, as characterized by the stipulation, "immediately available." Plaintiff alleges that he did not know that under the applicable tax laws the necessary funds were not "immediately available"—we must accept that allegation as true (*see Leon v Martinez*, 84 NY2d 83, 87 [1994])—and that a reasonably competent matrimonial attorney who read the stipulation would not have advised him to sign it. Given these allegations, the stipulation may constitute evidence of defendants' negligence and does not constitute a defense to the malpractice claim (*see Mandel, Resnik & Kaiser, P.C. v E.I. Elecs.,*

*Inc.*, 41 AD3d 386 [2007]; *IMO Indus. v Anderson Kill & Olick*, 267 AD2d 10 [1999]).

Furthermore, defendants' assertion that plaintiff's alleged damages are too speculative lacks merit. To survive a pre-answer motion to dismiss pursuant to CPLR 3211 (a) (7), "a pleading need only state allegations from which damages attributable to the defendant's conduct may reasonably be inferred" (*Lappin v Greenberg*, 34 AD3d 277, 279 [2006]). At this early stage of the proceedings, plaintiff " 'is not obliged to show . . . that [he] actually sustained damages,' " but only that "damages attributable to [defendants' conduct] might be reasonably inferred" (*InKine Pharm. Co. v Coleman*, 305 AD2d 151, 152 [2003], quoting *Tenzer, Greenblatt, Fallon & Kaplan v Ellenberg*, 199 AD2d 45, 45 [1993]).

The complaint sufficiently asserts that "but for" defendants' faulty advice that plaintiff sign the stipulation, he would not have incurred the tax liability that resulted from the withdrawal of funds from his retirement account (*see Lappin*, 34 AD3d at 279-280; *Tenzer, Greenblatt, Fallon & Kaplan*, 199 AD2d at 45). We do not regard as pure speculation plaintiff's contention that in no event would he have incurred that liability if the settlement had not been reached. Concur—Saxe, J.P., McGuire, Moskowitz and Acosta, JJ.