■ PATRICIA BENDECK, Respondent, v NYU HOSPITALS CENTER, Also Known as NYU MEDICAL CENTER, et al., Appellants. [909 NYS2d 439]—

Order, Supreme Court, New York County (Doris Ling-Cohan, J.), entered July 1, 2009, which denied defendants' motion for summary judgment, unanimously reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

It is alleged in the complaint that defendants violated the State and City Human Rights Laws by retaliating against plaintiff for opposing discriminatory employment practices (see Executive Law § 296 [7]; Administrative Code of City of NY § 8-107 [7]). On September 25, 2006, plaintiff began her six-month probationary period of employment as the executive assistant to defendant Johnson, the senior vice-president and general counsel of defendant NYU Hospitals Center (NYUHC). On December 1, plaintiff sent a coworker an e-mail accusing her of sexual harassment. The coworker immediately denied the accusation. Five days later, the coworker and her office manager apprised Johnson of the accusation and the office manager gave Johnson a copy of the e-mail string. The underpinning of plaintiff's retaliation claims is set forth in the following account, in her brief, of a meeting she had with Johnson later that month: "Johnson stated at the outset of the meeting that she wanted Plaintiff to find another job upon learning of the possible sexual harassment claim and that Johnson was angry that Plaintiff's complaint had reached the Human Resources Department." Plaintiff's later attempt to retreat from this position is belied by her own testimony that Johnson had angrily summoned her to the office after having just received "a call from human resources that you're building a sexual harassment case." Johnson disputed plaintiff's retaliation theory, testifying that she merely asked plaintiff if she was making a sexual harassment complaint against the coworker and told plaintiff that she herself would have to report the incident to human re-

sources department (HR) if she wanted to make such a complaint. According to Johnson, plaintiff said she was not making a complaint, did not want Johnson to get involved, and that the alleged sexual harassment had stopped.

Defendants moved for summary judgment on the grounds, among others, that (a) Johnson did not learn that HR was aware of plaintiff's accusation until after the December 2006 meeting, and (b) the termination of plaintiff's employment, which occurred in March 2007, was based upon misconduct and poor work performance. The court denied the motion, finding issues of fact on the basis of plaintiff's deposition. We disagree.

In order to make out a claim of unlawful retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered adverse employment action based on her activity, and (4) there is a causal connection between the protected activity and the adverse action (*see Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312-313 [2004]). To prevail on their summary judgment motion, defendants had to demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for their challenged actions, the absence of a material fact as to whether their explanations were pretextual (*id.* at 305). Summary judgment should have been granted because the facts essential to the retaliation claims were negated by affidavits and documentary evidence (*Blackgold Realty Corp. v Milne*, 119 AD2d 512, 513 [1986], *affd* 69 NY2d 719 [1987]). Here, HR's awareness of plaintiff's sexual harassment accusation as of the time of her meeting with Johnson was pivotal to the retaliation claims. In this respect, the coworker's supervisor stated in his affidavit that it was not until January 2007 that he advised the coworker to communicate with HR regarding plaintiff's accusation. The record contains a January 4, 2007 memorandum from the coworker to the senior vice-president for HR, annexed to which are the coworker's memo to file outlining her interactions with plaintiff and the e-mail string. NYUHC's vice-president of employee and labor relations acknowledged in his affidavit that the coworker's memorandum was forwarded to him on January 12, 2007. Accordingly, plaintiff has failed to raise a triable issue of fact as to whether she met her initial burden of establishing a prima facie case of unlawful retaliation.

Had a prima facie case of discrimination been established, the burden would have shifted to defendants to rebut a presumption of discrimination by clearly setting forth, through the

introduction of admissible evidence, legitimate, independent and nondiscriminatory reasons to support their decision to terminate plaintiff's employment (*see Matter of Miller Brewing Co. v State Div. of Human Rights*, 66 NY2d 937 [1985]). Even assuming a prima facie case of unlawful retaliation, defendants would have easily met their burden through depositions, affidavits and documents that provided substantial and significant reasons to terminate plaintiff's employment. These reasons included poor work performance such as plaintiff's failure to address an ongoing problem with invoices, punctuated by an insolent e-mail by which she told Johnson to handle the matter herself; discourteous treatment of other employees; a report of plaintiff's refusal to sign for a package being delivered to the vice-dean of administration; and an affidavit and incident report detailing menacing behavior on part of plaintiff toward another employee. Contrary to the motion court's finding, plaintiff's unsupported assertions were insufficient to establish that defendants' reasons were pretextual (*see Forrest*, 3 NY3d at 308 n 6). Concur—Friedman, J.P., Sweeny, DeGrasse, Richter and Manzanet-Daniels, JJ. **[Prior Case History: 2009 NY Slip Op 31441(U).]**