OPINION OF THE COURT
Lucy Billings, J.
I. Background
Plaintiff, an African-American woman, performed data entry in the mailroom of defendant Random House, Inc., under the direct supervision of defendant Swiss Post Solutions, Inc. Plaintiff alleges that both defendants jointly employed her, whereas defendants claim only Swiss Post Solutions employed her. She alleges that on February 17, 2009, she was transferred from her position at Random House to another workplace also supervised by Swiss Post Solutions. The parties dispute which defendant was responsible for the transfer. Although plaintiff refers throughout her complaint to a “termination,” the complaint actually describes only her transfer to a different workplace managed by Swiss Post Solutions and then being denied a transfer from her new workplace to an alternative workplace. Upon the facts alleged, plaintiff claims a hostile work environment, retaliation, and aiding and abetting discrimination.
After defendants moved to dismiss the complaint, CPLR 3211 (a) (1) and (7), plaintiff amended her complaint. (CPLR 3025 [a].) Defendants now maintain their motion to dismiss against the amended complaint. After oral argument and for the reasons explained below, the court grants defendants’ motion to the extent of dismissing plaintiffs second claim, for retaliation under state law, and her seventh claim, for interference with a protected right, against defendant Random House only. (CPLR *862 3211 [a] [7]; Executive Law § 296 [7]; Administrative Code of City of NY § 8-107 [19].) The court otherwise denies defendants’ motion. (CPLR 3211 [a] [1], [7]; Executive Law § 296 [1] [a], [e]; [6], [7]; Administrative Code § 8-107 [1], [7], [13], [19]; § 8-130.)
II. Plaintiffs Claims May Not be Dismissed Based on Defendants’ Documentary Evidence
Dismissal of the complaint’s claims pursuant to CPLR 3211 (a) (1) requires documentary evidence in admissible form that conclusively resolves all factual issues and establishes a defense as a matter of law. (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; McCully v Jersey Partners, Inc., 60 AD3d 562 [1st Dept 2009]; Zanett Lombardier, Ltd. v Maslow, 29 AD3d 495 [1st Dept 2006]; Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 289 [1st Dept 2003].) The documentary evidence must plainly and flatly contradict the claims in the complaint. (KSW Mech. Servs., Inc. v Willis of N.Y., Inc., 63 AD3d 411 [1st Dept 2009]; Arfa v Zamir, 55 AD3d 508, 509 [1st Dept 2008]; Kinberg v Kinberg, 50 AD3d 512, 513 [1st Dept 2008]; Sprung v Command Sec. Corp., 38 AD3d 478, 479 [1st Dept 2007].) The court may dismiss claims based on such evidence only if plaintiff fails to rebut it. (Hicksville Dry Cleaners, Inc. v Stanley Fastening Sys., L.P., 37 AD3d 218 [1st Dept 2007].)
Defendants’ motion to dismiss based on documentary evidence fails because the evidence is not authenticated or in admissible form. (Casey v New York El. & Elec. Corp., 82 AD3d 639 [1st Dept 2011]; Acevedo v Audubon Mgt., 280 AD2d 91, 95 [1st Dept 2001].) Even if the evidence were admissible, it would not conclusively resolve all factual issues raised by plaintiff s claims. First, Swiss Post Solutions’ unilateral stipulation that Swiss Post Solutions was plaintiffs sole employer does not bind plaintiff, because she in no way “manifested an adoption or belief in its truth.” (Addo v Melnick, 61 AD3d 453, 454 [1st Dept 2009], quoting Fed Rules Evid rule 801 [d] [2] [B].) While plaintiffs unilateral confidentiality agreement does acknowledge that Swiss Post Solutions employed plaintiff, she does not unambiguously acknowledge that it solely employed her.
Defendants rely on the confidentiality agreement between both alleged employers in Adler v 20/20 Cos. (82 AD3d 915 [2d Dept 2011]), where the agreement specifically delineated the roles and work performed by each defendant, providing a basis to conclude that only one of the defendants actually functioned as the plaintiffs employer. The confidentiality agreement here, *863 in contrast, binds neither defendant and indicates nothing regarding Random House’s functions.
Defendants’ statistics from the United States Equal Employment Opportunity Commission, by showing that defendants employed other African-American and female employees, may suggest that defendants did not discriminate or retaliate against plaintiff or create a hostile work environment, but the statistics do not conclusively establish that fact. Similarly, the newspaper articles defendants rely on may show that Random House is owned by a large foreign corporation rather than an individual named Mark as plaintiff alleges, but these articles do not conclusively establish that no individual named Mark owned Random House or directly supervised the mailroom supervisors under whom plaintiff worked.
III. Application of CPLR 3211 (a) (7) to Plaintiffs Claims
Upon defendants’ motion to dismiss claims pursuant to CPLR 3211 (a) (7), the court may not rely on facts alleged by defendants to defeat the claims unless the evidence demonstrates the absence of any significant dispute regarding those facts and completely negates the allegations against the moving defendants. (Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326; Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Yoshiharu Igarashi v Shohaku Higashi, 289 AD2d 128 [1st Dept 2001].) The court must accept the complaint’s allegations as true, liberally construe them, and draw all reasonable inferences in plaintiffs favor. (Nonnon v City of New York, 9 NY3d 825, 827 [2007]; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326; Harris v IG Greenpoint Corp., 72 AD3d 608, 609 [1st Dept 2010]; Vig v New York Hairspray Co., L.P., 67 AD3d 140, 144-145 [1st Dept 2009].) The applicable standard is thus whether reasonable inferences from the complaint sustain a claim, especially upon a pre-answer motion to dismiss as here. (Harris v IG Greenpoint Corp., 72 AD3d at 609; Pepler v Coyne, 33 AD3d 434, 435 [1st Dept 2006]; see Lappin v Greenberg, 34 AD3d 277, 279 [1st Dept 2006].) In short, the court may dismiss a claim based on CPLR 3211 (a) (7) only-if the allegations completely fail to state a claim. (Leon v Martinez, 84 NY2d at 88; Harris v IG Greenpoint Corp., 72 AD3d at 609; Frank v DaimlerChrysler Corp., 292 AD2d 118, 121 [1st Dept 2002]; Scott v Bell Atl. Corp., 282 AD2d 180, 183 [1st Dept 2001].)
The court assesses employment discrimination claims under a particularly relaxed “notice pleading” standard. (Vig v *864 New York Hairspray Co., L.P., 67 AD3d at 145.) Under notice pleading, plaintiff need not plead specific facts, but need only give defendant “fair notice” of the nature and grounds of her claims. (Id.) Although Vig v New York Hairspray Co., L.P. (67 AD3d at 145) cites a 2002 United States Supreme Court decision applying the Federal Rules of Civil Procedure, the First Department decided Vig September 15, 2009, four months after the Supreme Court’s rearticulation of federal pleading standards in Ashcroft v Iqbal (556 US 662 [2009]), on which defendants rely. Vig therefore represents the First Department’s determination to adhere to notice pleading standards under New York law regardless of Iqbal’s implications for notice pleading under federal law.
A. Plaintiff Sufficiently Alleges That Both Defendants Were Her Employers
Plaintiff’s claims of a hostile workplace, retaliation, and vicarious liability for discrimination require her to allege that defendants were her employers. (Executive Law § 296 [1] [a]; [7]; Administrative Code § 8-107 [1] [a]; [7], [13].) Swiss Post Solutions acknowledges it employed plaintiff. (Aff in support of defendants’ motion to dismiss of Ricki E. Roer If 2, exhibit B [Apr. 30, 2010].) Plaintiff gives Random House fair notice of her claim that Random House employed her by alleging that an individual named Mark owned Random House, directly supervised plaintiffs supervisors, had authority to terminate plaintiff or direct her transfer, and in fact exercised that authority by demanding that she be terminated or transferred from her current position at Random House. (Sanchez v Brown, Harris, Stevens, 234 AD2d 170 [1st Dept 1996]; State Div. of Human Rights v GTE Corp., 109 AD2d 1082, 1083 [4th Dept 1985]; Santos v Brookdale Hosp. Med. Ctr., 29 Misc 3d 1207[A], 2010 NY Slip Op 51716[U], *3 [Sup Ct, Kings County 2010]; see Matter of Villa Maria Inst. of Music [Ross], 54 NY2d 691, 692 [1981]; Vincente v Silverstein Props., Inc., 83 AD3d 586 [1st Dept 2011]; Arculeo v On-Site Sales & Mktg., LLC, 425 F3d 193, 198 [2d Cir 2005].) Even assuming the improbability that the owner of a large, international publishing corporation directly supervised its mailroom, plaintiffs allegations sufficiently place defendants on notice that plaintiff claims a Random House employee directly supervised the mailroom and exercised such authority over plaintiff as to consider Random House her employer.
*865 B. Plaintiff States Claims for a Hostile Work Environment
State law prohibits discrimination in the form of a hostile work environment where “the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.” (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004]; see Executive Law § 296 [1] [a].) Plaintiff readily pleads a hostile work environment, including defendants’ knowledge of and acquiescence to that environment, by alleging that her manager repeatedly made specified racially derogatory comments, addressed both to plaintiff and to others in her presence; asked her about her preferred sexual positions; solicited sexual relations from her; and commented about her body. She further alleges that the comments distressed her to the point of tears, and, when she complained about the continuing racially derogatory comments to her manager’s supervisor, the supervisor dismissed the manager’s behavior as “Joe’s way of apologizing.” (Aff in opposition of Ismail S. Sekendiz, exhibit A 11 38 [June 16, 2010].)
■ Related to these racially and sexually explicit taunts, plaintiff alleges that defendants failed to provide her the requisite uniform and then singled her out for criticism due to her deficient attire. Although criticism of her attire, even if unfounded and arbitrary, by itself might not suggest race or gender discrimination, the more explicit remarks cast an infer-able discriminatory motive on the harassment over her attire as well.
In any event, the explicit remarks delineated above sustain plaintiffs claim of a hostile work environment under state law. Moreover, because the State Human Rights Law represents “a floor below which the City’s Human Rights law cannot fall,” plaintiff also states a claim of a hostile work environment under city law. (Williams v New York City Hous. Auth., 61 AD3d 62, 66 [1st Dept 2009]; see Administrative Code § 8-107 [1], [13] [b]; § 8-130; Brightman v Prison Health Servs., Inc., 62 AD3d 472 [1st Dept 2009].)
C. Retaliation and Interference with a Protected Right
To sustain a claim for retaliation, plaintiff must allege that she engaged in protected activity, that her employer was aware of the protected activity, and that she suffered an adverse employment action as a result of the protected activity. {Forrest *866 v Jewish Guild for the Blind, 3 NY3d at 312-313; Bendeck v NYU Hosps. Ctr, 77 AD3d 552, 553 [1st Dept 2010].) Plaintiff alleges that she engaged in protected activity by complaining on two separate occasions about being harassed. She alleges that defendant Swiss Post Solutions was aware of the protected activity because her site manager Jeff Price, a Swiss Post Solutions employee, was at the meeting where she initially complained, subsequently warned her not to use the word “harassment,” and later reassigned her. Although plaintiff does not so distinctly allege that Random House knew of her protected activity before demanding her transfer, she does allege that Random House’s owner or at least a Random House employee directly supervised her supervisors and was always at her work site. Since it reasonably may be inferred that plaintiff was not privy to communications between “Mark” and her supervisors, she is not necessarily expected, before disclosure, to make more specific allegations regarding defendants’ knowledge. The function of a liberal notice pleading standard is precisely to permit an opportunity for such disclosure. (Mohammad v Board of Mgrs. of 50 E. 72nd St. Condominium, 262 AD2d 76, 77 [1st Dept 1999].) Under the City Human Rights Law, moreover, plaintiff would state a claim for defendants’ vicarious liability even if she did not allege their knowledge, since she alleges that defendants’ employees or agents ordered and carried out the retaliation. (Administrative Code § 8-107 [13] [a].)
Plaintiff also alleges adverse employment action under the City Human Rights Law by alleging that defendants transferred her to a different work location and gave her an undesirable schedule. (Administrative Code § 8-107 [7]; § 8-130; Albunio v City of New York, 16 NY3d 472, 476 [2011].) Plaintiffs citation, even in her amended complaint, to Administrative Code § 8-107 (1) (e), a paragraph inapplicable to her allegations, does not require dismissal of her retaliation claim. The court looks only to whether plaintiff sustains a claim under the law, not whether she accurately cites that law or states the claim with artful precision. (Leon v Martinez, 84 NY2d at 88; Harris v IG Greenpoint Corp., 72 AD3d at 609; Pepler v Coyne, 33 AD3d at 435; Frank v DaimlerChrysler Corp., 292 AD2d at 121.)
Unlike the State Human Rights Law, the City Human Rights Law expressly forbids retaliation “in any manner” (Administrative Code § 8-107 [7]; Williams v New York City Hous. Auth., 61 AD3d at 70), and expressly requires a more liberal interpretation than state or federal anti-discrimination law. *867 (Administrative Code § 8-130; Albunio v City of New York, 16 NY3d at 477; Williams v New York City Hous. Auth., 61 AD3d at 70.) Under the State Human Rights Law, inconvenience and an undesirable schedule do not constitute adverse employment actions. (Executive Law § 296 [7]; Forrest v Jewish Guild for the Blind, 3 NY3d at 307; Ponterio v Kaye, 25 AD3d 865, 869 [3d Dept 2006].) Because plaintiff does not allege that Random House supervisors or employees took any action besides requesting her transfer, her state law claim for retaliation must be dismissed against Random House. (Forrest v Jewish Guild for the Blind, 3 NY3d at 307; Ponterio v Kaye, 25 AD3d at 869.) Plaintiff does allege Swiss Post Solutions’ adverse employment action under state law, however, because she further sets forth that, after she complained, Swiss Post Solutions employees and supervisors increased their harassment of her, threatened her, and attempted to intimidate her. (Executive Law § 296 [1] [e]; [7]; Mohammad v Board of Mgrs. of 50 E. 72nd St. Condominium, 262 AD2d at 77.)
Plaintiff alleges a causal connection between her protected conduct and the adverse employment actions by recounting that, six days after she initially complained about her harassment and three days after she followed up, her site manager warned her “don’t use the word harassment it is a very dangerous word” and “if you don’t listen to and follow my directions you will be getting transferred.” (Sekendiz aff, exhibit A If 39.) Plaintiff further alleges that eight days later the same site manager transferred plaintiff to a new and undesirable position, at the direction of Random House’s owner. Finally, plaintiff alleges that her initial harasser stepped up his insults against her and that his supervisor brushed off her ensuing complaint.
By alleging the manager’s threats, plaintiff also states a claim against Swiss Post Solutions for interference, through threats or intimidation, with a protected right. (Administrative Code § 8-107 [19]; see Montanez v New York City Hous. Auth., 5 AD3d 314, 315 [1st Dept 2004].) Because plaintiff does not allege that any Random House supervisors or employees threatened or intimidated her or took any action besides requesting her transfer, her claim against Random House for interference with a protected right must be dismissed. (Id.)
D. Plaintiff States Claims for Aiding and Abetting Discrimination
Although defendants cannot aid and abet their own discriminatory actions, plaintiffs specification of each defend *868 ant’s actions and supervisory role states a claim under state law against each defendant for aiding and abetting race and gender discrimination by the other defendant. (Executive Law § 296 [6]; Sanchez v Brown, Harris, Stevens, 234 AD2d 170 [1996]; Mitchell v TAM Equities, Inc., 27 AD3d 703, 707 [2d Dept 2006]; Strauss v New York State Dept. of Educ., 26 AD3d 67, 73 [3d Dept 2005].) Again, because the State Human Rights Law represents “a floor below which the City’s Human Rights law cannot fall,” plaintiff also states a claim for aiding and abetting discrimination under city law. (Williams v New York City Hous. Auth., 61 AD3d at 66; see Administrative Code § 8-107 [6], [13] [a]; § 8-130; Brightman v Prison Health Servs., Inc., 62 AD3d 472 [2009].) Under the City Human Rights Law, plaintiff states a further claim of defendants’ vicarious liability for aiding and abetting by specifically alleging that Swiss Post Solutions’ employees Cary Richardson and Jeff Price excused and acquiesced in the racial and sexual harassment of plaintiff and threatened her with retaliation and that Random House’s owner or employee ordered plaintiffs transfer. (Administrative Code § 8-107 [13] [a].)
IV Conclusion
Consequently, and as set forth above, the court grants defendants’ motion to dismiss only to the extent of dismissing, against defendant Random House, Inc., only, plaintiffs second claim, for retaliation under state law, and her seventh claim, for interference with a protected right (CPLR 3211 [a] [7]; Executive Law § 296 [7]; Administrative Code § 8-107 [19]), and otherwise denies defendants’ motion. (CPLR 3211 [a] [1], [7]; Executive Law § 296 [1] [a], [e]; [6], [7]; Administrative Code § 8-107 [1], [7], [13], [19]; § 8-130.)