**Campbell v Authentic Brands Group LLC**

2025 NY Slip Op 30148(U)

January 15, 2025

Supreme Court, New York County

Docket Number: Index No. 155160/2020

Judge: Shlomo S. Hagler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | **HON. SHLOMO S. HAGLER** | PART | 17 |

_Justice_

----------------------------------------------------------------X

AMY LILLIAN CAMPBELL,

                         Plaintiff,

               - v -

AUTHENTIC BRANDS GROUP LLC, THEMAVEN INC.,
SPORTS ILLUSTRATED, JAMES HECKMAN, ROSS
LEVINSOHN, EDWARD BUCCIO, JULIE IANNUZZI, AMY
LARKIN,

                         Defendants.

----------------------------------------------------------------X

| INDEX NOS. | 155160/2020 |
| MOTION DATE | 06/23/2021 |
| MOTION SEQ. NOS. | 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Index No. 155160/2020, Motion 004) 40, 41, 42, 44, 46, 48, 51

were read on this motion to/for                 DISMISS          .

In this discrimination and retaliation action by plaintiff Amy Lillian Campbell (Campbell), defendants Authentic Brands Group LLC (ABG), The Maven Inc. (Maven), James Heckman (Heckman), Ross Levinsohn (Levinsohn), Edward Buccio (Buccio), Julie Iannuzzi (Iannuzzi), and Amy Larkin (Larkin) (collectively, defendants), move pursuant to CPLR 3211 (a) (7), for an order dismissing plaintiff's amended complaint, except for the retaliation cause of action against Maven under the New York State Human Rights Law (NYSHRL).

## FACTUAL BACKGROUND

The following facts are taken from the plaintiff's amended complaint and are assumed to be true for the purposes of this motion.

_The parties_

Campbell names as defendants ABG, the owner of Sports Illustrated (SI) (NYS Cts Elec Filing [NYSCEF] Doc No. 25, amended complaint at ¶ 3), SI (_id._ at ¶ 4), and Maven, the

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

Page 1 of 33

operator of SI (*id.*). Campbell also names Levinsohn, CEO of SI through August 2020 (*id.* at ¶ 6) and Heckman, CEO of Maven through August 2020, when Levinsohn took over the position (*id.* at ¶¶ 5-6). Additionally, Campbell names Buccio, a Maven technical director, Iannuzzi, Maven's vice-president of video, and Larkin, director of human resources at Maven (*id.* at ¶¶ 7-9).

*ABG purchases SI*

In May 2019, ABG purchased SI, a sports site network that creates programming and reporting (*id.* at ¶¶ 2, 25). On June 18, 2019, ABG sold the operating rights of SI to Maven, a digital-media publishing network (*id.* at ¶¶ 4 & 25). Campbell alleges that after Maven purchased the operating rights to SI, Heckman and Levinsohn laid off approximately 40% of the staff, appointed new management, and cancelled much of SI's programming (*id.* at ¶ 28).

*Campbell's discrimination, harassment, and retaliation claims*

Between September 2016 and February 2020, Campbell worked as an on-air host at SI, classified as an independent contractor (*id.* at ¶¶ 13, 20 & 85). Campbell alleges that while at SI, Buccio harassed and intimidated her on several occasions because she is a woman (*id.* at ¶ 48). On January 2, 2020, Buccio allegedly ordered the hair and makeup unit (HMU) to fix Campbell's hair (*id.* at ¶ 46). According to Campbell, on-air talent customarily decided when they needed help (*id.*). Campbell claims she was "shocked by the manner" in which Buccio discussed her appearance and that a "male dictate[d] an appearance change for her" (*id.*). Campbell represents that she told Buccio she did not want to change her hair but, given no choice, allowed the stylist to adjust it (*id.* at ¶ 47). Later, when Campbell again declined HMU's assistance, Buccio escorted the stylist over to Campbell to "fix" her appearance (*id.* at ¶ 49). Campbell insists that, upon information and belief, Buccio did not humiliate male employees over their appearance or order them to change their physical appearance (*id.* at ¶ 48).

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 2 of 33**

2 of 33

[* 2]

After, Campbell reported the incident to Adam Rozwadowski[1] (Rozwadowski), her producer on the shoot (*id.* at ¶ 50). Together, they told Buccio that his focus on Campbell's appearance was offensive and asked him to stop (*id.* at ¶ 51). Moreover, Rozwadowski allegedly told Buccio it was not up to him to make calls about plaintiff's hair (*id.* at ¶ 52). According to Campbell, Buccio responded by screaming "I am the director! I run the studio! And if I want hair and makeup to stand on set all day, she will stand there all day! She is paid to be here, and I am the boss. If I say she has to be here she has to be here" (*id.* at ¶ 53). Campbell claims she and Rozwadowski reported the incident to a coordinating producer, nonparty David Seperson (Seperson) (*id.* at ¶ 55), who told them they handled the situation properly (*id.*).

In another incident on January 9, 2020, Buccio allegedly approached Campbell and "ran his hand through her hair while looking in her eyes" (*id.* at ¶ 58). Campbell claims she was extremely upset and uncomfortable and told Buccio never to touch her without her permission (*id.* at ¶ 60). The amended complaint alleges, upon information and belief, that Buccio touched Campbell to assert power over her as a woman (*id.* at ¶ 59). Campbell also alleges Buccio touched her because he was aware that she reported the prior incident and wanted her to know that Maven would not protect Campbell but would protect Buccio instead (*id.* at ¶ 59). Seperson allegedly observed this incident and told Campbell that he instructed Buccio to let Seperson handle Campbell's appearance (*id.* at ¶ 62). Campbell alleges that without clear "arrangements and directions," she had limited access to studios, which "made it harder to earn money and produce content regularly" (*id.* at ¶ 63).

According to the amended complaint, on January 13, 2020, Campbell discussed Buccio's

---

[1] Rozwadowski has commenced an action for retaliation against the defendants arising out of the same series of events under the index no. 155162-2020, which is also pending before this Court.

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 3 of 33**

[* 3]

conduct with SI's senior producer of video strategy, nonparty Tom Mantzouranis (Mantzouranis) and with Seperson. The managers allegedly contacted human resources and Iannuzzi, Maven's vice-president of video (*id.* at ¶ 64), and then told plaintiff not to work with Buccio at the studio (*id.*).

The amended complaint alleges that on January 14, 2020, Rozwadowski informed Campbell that Larkin, Maven's director of human resources, asked Rozwadowski to recount the incident and repeatedly asked why Campbell did not report it to human resources (*id.* at ¶¶ 65 & 66). According to Campbell, Rozwadowski told her that Larkin wanted Rozwadowski to agree "the conduct must not have been a big deal" since Campbell had not reported it to human resources herself (*id.*). Consequently, Campbell reported the alleged discrimination to Larkin (*id.* at ¶ 69). Larkin allegedly told Campbell that an investigation had already been conducted, but Maven would not be taking disciplinary action against Buccio (*id.*). Campbell alleges Larkin told her she would have to work alongside Buccio at the studio, but they would not work together (*id.*). Larkin also allegedly told Campbell that Buccio had been instructed to keep a "safe and comfortable distance" from her (*id.* at ¶ 70). Campbell claims that she was worried about retaliation and questioned the confidentiality of her reports, despite assurances from Larkin, since Buccio had been instructed to keep a distance from her (*id.* at ¶ 72). Campbell alleges that after she informed Larkin that her desk was next to Buccio's, his desk was moved to the other side of the room (*id.* at ¶¶ 71 & 75). Campbell asserts the impact of making the report was that she "had less work and less opportunity, not defendant Buccio" (*id.* at ¶ 76).

The amended complaint alleges upon information and belief that Larkin informed Iannuzzi, Heckman, and Levinsohn about Campbell's reports (*id.* at ¶ 73). The amended

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 4 of 33**

[* 4]

complaint also alleges upon information and belief that Iannuzzi "lobbied to ignore" Campbell's complaints due to Iannuzzi's friendship with Buccio (*id.* at ¶ 74).

In an incident that occurred after Campbell and Buccio resumed working in the same studio, Buccio allegedly barged into Campbell's makeup room and scolded a female HMU stylist about another female employee's appearance (*id.* at ¶ 77). Campbell alleges upon information and belief that this incident was retaliation for reporting Buccio (*id.* at ¶ 78). When she told Seperson about it, he allegedly told Campbell that Buccio did not break any rules (*id.* at ¶ 80).

*Communications about Campbell's reports*

According to the complaint, in late January 2020, Seperson told Campbell he was included "on emails and phone calls with the 'higher ups' about her report and what would happen next" (*id.* at ¶ 82). Seperson allegedly warned Campbell that Iannuzzi was on the calls saying negative things about Campbell and vouching for Buccio (*id.*). Campbell claims she understood the "higher ups" to include Heckman, Levinsohn, Iannuzzi, and Larkin (*id.* at ¶ 83).

*Assurances of employment and termination*

According to the amended complaint, throughout this time, Campbell received multiple assurances of employment (*id.* at ¶¶ 38, 57, & 68). According to Campbell, on January 23, 2020, Levinsohn met with all the contractors, including Campbell, and assured them he "was making sure" every contractor in the room would imminently receive a full-time job offer from Maven (*id.* at ¶ 68). Levinsohn also allegedly represented that his job as CEO was, among other things, to "hire and fire well, . . . solve problems," and post openings and hire for those jobs (*id.*). The amended complaint alleges that the entire SI NOW team, except Campbell and Rozwadowski, received job offers (*id.* at ¶ 85). Despite receiving multiple assurances of employment, Campbell was terminated after reporting the alleged discriminatory conduct (*id.* at ¶ 87).

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**      **Page 5 of 33**
**Motion No. 004**

5 of 33

[* 5]

*Unequal pay claims*

Campbell alleges that she began work as a live host of SI NOW in September 2016 (*id.* at ¶ 13), filling in for SI NOW's regular and back-up hosts (*id.*). Campbell claims she and her team were classified as independent contractors, and she was compensated at a per-diem rate of $400 (*id.* at ¶¶ 13 & 20). Campbell alleges that defendants did not pay for her health insurance, benefits, or bonuses (*id.* at ¶ 20).

In January 2017, SI allegedly hired Campbell as an alternate host on SI WIRE, SI's website for breaking news videos (*id.* at ¶ 14). Campbell claims she became part of the regular SI WIRE rotation and hosted three to four shifts per week (*id.*).

When the female co-host of SI NOW left in November 2017, Campbell alleges she began to fill in at SI NOW more regularly (*id.* at ¶ 16). By January 2018, Campbell was part of a three-person rotation co-hosting with Robin Lundberg (Lundberg), a male co-host, who had joined SI NOW in the summer of 2017 (*id.* at ¶ 17). Campbell alleges the rotating hosts were told they were auditioning and filling in until the position was permanently staffed (*id.* at ¶ 16).

By September 2018, Campbell was only working at SI NOW as a co-host with Lundberg (*id.* at ¶ 17). According to Campbell, she continued to be compensated at the $400 daily rate, despite performing substantially equivalent work to Lundberg, who was compensated at the rate of $500 per day (*id.*). Campbell alleges she requested the same pay as Lundberg, but the vice-president of SI NOW at the time declined her request (*id.* at ¶ 18). Campbell alleges that she reported the disparity as sex-based discrimination because she performed the same job as Lundberg, had worked at SI longer, and had more experience with online reporting platforms (*id.*). In September 2019, Maven promoted her to a permanent, daily co-host position at SI NOW receiving the same rate of pay as Lundberg (*id.* at ¶ 19).

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 6 of 33**

[* 6]

6 of 33

*Campbell's causes of action*

Campbell commenced the instant action by summons with notice on July 8, 2020 (NYSCEF Doc. No 1). On May 19, 2021, Campbell filed an amended complaint interposing six causes of action against defendants: the first cause of action for sex discrimination in violation of the NYSHRL; the second cause of action for sex discrimination in violation of the New York City Human Rights Law (NYCHRL); the third cause of action for retaliation in violation of the NYSHRL; the fourth cause of action for retaliation in violation of the NYCHRL; the fifth cause of action for unequal pay in violation of the federal Equal Pay Act (EPA); and the sixth cause of action for unequal pay in violation of New York's Labor Law § 194 [1] (NYEPA) (*id.* at ¶¶ 89-112).

## DISCUSSION

### *Motion to Dismiss Standard*

*CPLR 3211 (a) (7)*

On a CPLR 3211 (a) (7) motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). However, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration" (*David v Hack*, 97 AD3d 437, 438 [1st Dept 2012] [internal quotation marks and citation omitted]).

Additionally, "employment discrimination cases are . . . generally reviewed under notice pleading standards" (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009]). Under the liberal notice pleading standard, the plaintiff alleging employment discrimination is

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

Page 7 of 33

7 of 33

[* 7]

not required to plead specific facts to establish a prima facie case of discrimination (*id.*). Instead, the plaintiff only needs to give "'fair notice' of the nature of the claim and its grounds" (*id.* [citation omitted]; *see Petit v Department of Educ. of the City of N.Y.*, 177 AD3d 402, 403 [1st Dept 2019] ["Fair notice is all that is required to survive at the pleading stage"]).

### The NYCHRL Claims & Failure to Satisfy Administrative Prerequisites

Contrary to defendants' contention, Administrative Code § 8-502 (c) is not a precondition to suit. Administrative Code § 8-502 (c) states in relevant part that "[w]ithin 10 days after having commenced a civil action pursuant to subdivision a of this section, the plaintiff shall serve a copy of the complaint upon . . . authorized representatives [of the city commission on human rights (NYCCHR) and corporation counsel]." In *Bernstein v 1995 Assoc.*, 217 AD2d 512 (1st Dept 1995), the Appellate Division, First Department held that the language of Administrative Code § 8-502 (c) "was designed not to create a condition precedent, but to serve as a device by which the City Commission on Human Rights and the New York City Corporation Counsel would be apprised of any actions commenced under [T]itle 8" (*Bernstein*, 217 AD2d at 516; *see also Teller v America W. Airlines, Inc.*, 240 AD2d 727, 728 [2d Dept 1997]). The *Bernstein* Court reasoned that Administrative Code § 8-502 (c) lacked express language that no action or special proceeding could be prosecuted or maintained unless commencing documents had been served on representatives of the NYCCHR and the New York City Corporation Counsel (*Bernstein*, 217 AD2d at 515).

Here, Campbell was not required to serve copies of the amended complaint on NYCCHR or Corporation Counsel as a condition precedent to commencing or maintaining the action. For the foregoing reasons, noncompliance with the service requirement of Administrative Code § 8-502 (c) does not mandate dismissal of the instant action.

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**            **Page 8 of 33**
**Motion No.  004**

8 of 33

### *ABG's employment relationship and liability to Campbell*

Defendants argue that the complaint must be dismissed against ABG because it is entirely devoid of allegations that ABG was Campbell's employer for the purposes of the NYSHRL, the NYCHRL, the NYEPA, or the EPA under any theory of employment, including as a joint employer or single employer with Maven or Entertainment Partners (EP).[2] In opposition, Campbell argues that the amended complaint alleges that ABG was Maven's corporate owner and, as such, Campbell should be permitted to conduct discovery to establish whether indicia of an employment relationship were present.

To maintain a cause of action for employment discrimination under the NYSHRL and NYCHRL, "the plaintiff must allege the existence of an employment relationship" (*Cannizzaro v City of New York*, 82 Misc 3d 563, 573 [Sup Ct, NY County 2023]; *see* Executive Law § 296 [1] [a]; *see* Administrative Code § 8-107 [1] [a] [2-3]). Liability for employment discrimination extends to entities "related to, but legally distinct from, the direct employer if the two entities" operate as joint or single employers (*DeMarzo v Urban Dove, Inc.*, 41 Misc 3d 1209[A], 2013 NY Slip Op 51623[U], *4 [Sup Ct, Kings County 2013]). To determine whether a non-employer is a joint employer, the Appellate Division, First Department has adopted the immediate control test (*Brankov v Hazzard*, 142 AD3d 445, 446 [1st Dept 2016]). Under the immediate control test, the court may find a joint employer relationship where

> "there is sufficient evidence that the defendant had immediate control over the other company's employees, and particularly the defendant's control over the employee in setting the terms and conditions of the employee's work. Relevant factors in this exercise include commonality of hiring, firing, discipline, pay, insurance, records, and supervision" (*id.* [internal citations and quotation marks omitted]).

---

[2] EP was the entity that compensated the independent contractors at Sports Illustrated (NYSCEF Doc No. 6 at ¶ 3). Campbell named EP as a defendant in the original complaint but subsequently discontinued the proceeding against it (NYSCEF Doc No. 34).

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 9 of 33**

9 of 33

[* 9]

The most significant factor when applying the immediate control test is "the extent of the employer's right to control the means and manner of the worker's performance" (*id.*). If the plaintiff can establish the requisite level of control, the remainder of the factors "are then of marginal importance" (*id.*).

The single employer doctrine imposes liability for violations of the NYSHRL and NYCHRL on entities that are part of a single enterprise (*Moraetis v Evans*, 150 AD3d 403, 404 [1st Dept 2017]). The single employer doctrine consists of "four criteria to determine whether two or more companies are sufficiently interrelated to constitute a single entity: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control of the entities in question" (*Lockwood v CBS Corp.*, 219 AD3d 1326, 1328 [2d Dept 2023] [internal quotation marks and citations omitted]; *see Batilo v Mary Manning Walsh Nursing Home Co., Inc.*, 140 AD3d 637, 638 [1st Dept 2016]). The most critical factor in this inquiry is whether there was centralized control of labor (*Lockwood*, 219 AD3d at 1328). Centralized control of labor may be found upon an examination of which "entity made the final decision regarding employment matters related to the person claiming discrimination" (*id.*). This "requires some showing of a central human resources department" (*Batilo*, 140 AD3d at 638).

For purposes of the EPA and the NYEPA, New York courts implement the economic reality test "set forth by the federal courts" when "determining whether an entity is an employer" (*Fonville v Legends Hospitality, LLC*, 67 Misc 3d 1233[A], 2020 NY Slip Op 50711[U], *2 [Sup Ct, Bronx County 2020], *affd* 195 AD3d 485 [1st Dept 2021] [citations omitted]). The economic reality test consists of "four factors: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 10 of 33**

10 of 33

employment, (3) determined the rate and method of payment, and (4) maintained employment records" (*id.* [internal quotation marks and citations omitted]).

Despite Campbell's contentions, the amended complaint fails to plead that ABG was the corporate owner of Maven. The amended complaint only alleges that ABG "is the owner of Sports Illustrated, and on June 18, 2019, sold to Defendant Maven Media Brand the operating rights to manage Sports Illustrated" (NYSCEF Doc No. 25, amended complaint at ¶ 4). Campbell did not plead any fact regarding ABG's relationship to Maven or SI, except that ABG sold the operating rights of SI to Maven.

The amended complaint is also entirely silent regarding ABG's involvement in operating SI or any authority it may have retained over SI after it transferred the operating rights. There are no allegations that anyone employed by Maven, SI, or EP took direction from ABG or anyone affiliated with ABG or that ABG paid anyone's salaries, provided benefits, maintained personnel records, or performed any other function. There is nothing in the amended complaint that would satisfy the elements of the immediate control test or the economic reality test, or point to a centralized control of labor for the purposes of the relevant statutes (*see Batilo*, 140 AD3d at 638 [First Department reversing the trial court's denial of defendant Roman Catholic Archdiocese's motion to dismiss, where plaintiff's factual allegations failed to state any basis for a finding of a joint employment relationship with plaintiff's direct employers]; *Lockwood*, 219 AD3d at 1328 [Second Department dismissing complaint against defendant CBS Corporation, where plaintiff failed to sufficiently plead or evince facts that would support a finding of a single employer relationship]).

To the extent Campbell argues that discovery will yield proof that ABG was a joint or

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 11 of 33**

11 of 33

single employer with Maven, "[t]he mere hope that discovery might provide some factual support for a cause of action is insufficient to avoid dismissal of a patently defective cause of action" (*Mandarin Trading Ltd. v Wildenstein*, 65 AD3d 448, 451 [1st Dept 2009], *affd* 16 NY3d 173 [2011] [citation omitted]; *see Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 144 [2017]). The excerpts from newspaper articles on which Campbell relies in her opposition are insufficient to remedy the defects in the amended complaint. Even if this Court were to consider them, Campbell provides such articles to buttress her unsuccessful claim that discovery is necessary to obtain factual support for her allegations. Campbell cannot avoid dismissal of her claims against ABG, where the amended complaint is entirely devoid of allegations that could support a finding that ABG is an employer under any theory within the meaning of the NYSHRL, NYCHRL, EPA, or NYEPA. For the foregoing reasons, the amended complaint is dismissed against ABG its entirety.

### Campbell's retaliation claims

#### i.      Retaliation under NYCHRL

Administrative Code § 8-107 [7] makes it "an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter . . ." (*see Nezaj v PS450 Bar & Rest.*, 719 F Supp 3d 318, 330 [SD NY 2024]). To establish a retaliation claim under the NYCHRL, a plaintiff must demonstrate that "(1) [the plaintiff] participated in a protected activity known to defendants; (2) defendants took an employment action that disadvantaged [the plaintiff]; and (3) a causal connection exists between the protected activity and the adverse employment action (*Fletcher v Dakota, Inc.*, 99 AD3d 43, 51-52 [1st Dept 2012]). In *Fletcher*, the Court held that Administrative Code § 8-107 [7] should

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 12 of 33**

12 of 33

be construed "like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*id.* at 51). Under the NYCHRL, a plaintiff is not required to allege a materially adverse change in the terms and conditions of employment, but "that the retaliatory or discriminatory act . . . complained of [was] reasonably likely to deter a person from engaging in protected activity" (Administrative Code § 8-107 [7]). It is well-settled that "the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 71 [1st Dept 2009], *lv denied* 13 NY3d 702 [2009]).

In the case cited by defendants, *Doe v Bloomberg L.P.*, 36 NY3d 450, (2021), the Court of Appeals held that

> "where a plaintiff's employer is a business entity, the shareholders, agents, limited partners, and employees of that entity are not employers within the meaning of the City HRL. Rather, those individuals may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, *or for retaliation against protected conduct* (*id.* at 459 [emphasis supplied], citing Administrative Code § 8–107 [1], [6], [7]; *see also* Executive Law § 292 [5]).

The Court found that defendant CEO Bloomberg was not liable as an employer under the NYCHRL, where the plaintiff had not alleged that Bloomberg personally participated in the alleged discriminatory conduct (*id.* at 453, 463).

Under the NYCHRL, "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions 1 and 2 of this section" (Administrative Code § 8-107 [13] [a]). The NYCHRL "is clear as to when an employer is liable: for the employer's own offending conduct and vicariously for some actions of others" (*Doe*, 36 NY3d at 455).

> ii.    *Retaliation under NYSHRL*

Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for any person

155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC
Motion No. 004

Page 13 of 33

13 of 33

engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article" (Executive Law § 296 [7]). To establish a claim of unlawful retaliation under the NYSHRL, the complaint must allege that (1) plaintiff has engaged in protected activity, (2) defendants were aware that plaintiff participated in such activity, (3) plaintiff experienced an adverse employment action because of that activity, and (4) there was a causal connection between the protected activity and the adverse action (*Fletcher*, 99 AD3d at 51 [citing *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312-313 (2004)]).

It is well settled that "[a]n employee engages in a 'protected activity' by 'opposing or complaining about unlawful discrimination'" (*Black v ESPN, Inc.*, 70 Misc 3d 1217[A], 2021 NY Slip Op 50118[U], *17 [Sup Ct, NY County 2021], citing *Forrest*, 3 NY3d at 313; *see Sorrentino v Bohbot Entertainment & Media*, 265 AD2d 245, 245 [1st Dept 1999]). Regarding the knowledge element of a retaliation claim, "nothing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" (*Seemungal v New York State Dept. of Fin. Servs.*, 222 AD3d 467, 468 [1st Dept 2023] [internal quotation marks and citation omitted]). To be adverse, it has traditionally been required that an employment action constitute "a materially adverse change in the terms and conditions of employment . . . , [which is] more disruptive than a mere inconvenience or an alteration of job responsibilities" (*Forrest*, 3 NY3d at 306). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" (*id.* [citation omitted]).

Further, it has been held that "[a] causal connection between a protected activity and a negative employment outcome may be reasonably inferred from the passing of a brief period of

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 14 of 33**

14 of 33

time between the two" (*Gershenson v Local 52*, 2022 NY Slip Op 32546[U], *7 [Sup Ct, NY County 2022]; *see Ramos v Metro-North Commuter R.R.*, 194 AD3d 433, 434 [1st Dept 2021] ["The temporal proximity between plaintiff's EEOC complaint and the incident leading up to her termination, and her termination raise an issue of fact as to a causal connection, as these events occurred within weeks of each other"] [citation omitted]; *Bateman v Montefiore Med. Ctr.*, 183 AD3d 489, 490-491 [1st Dept 2020]).

The NYSHRL was amended in August 2019 to "require an independent liberal analysis to accomplish remedial purposes, as well as narrow construction of exceptions and exemptions" (*Golston-Green v City of New York*, 184 AD3d 24, 35 n 1 [2d Dept 2020]; *Brown v New York City Dept. of Educ.*, 2023 NY Slip Op 30106[U], *11 [Sup Ct, NY County 2023]). While the decisional authority applying the law after the 2019 amendments is limited, courts presented with this issue have interpreted the amendment as instructing the "courts to apply a liberal construction of the statute so thus the approach of the NYCHRL should be applied in reviewing retaliation claims under the NYSHRL" (*Rivas v International Academy of Hope*, 83 Misc 3d 1289[A], 2024 NY Slip Op 51253[U], *24 [Sup Ct, NY County 2024]; *Hunold v City of New York*, 83 Misc 3d 1288[A], 2024 NY Slip Op 51241[U], *5 n 4 [Sup Ct, NY County 2024]; *Cannizzaro v City of New York*, 82 Misc 3d 563, 577 [Sup Ct, NY County 2023]; *see* Executive Law § 300 ["The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof"]).

### iii.    Analysis

Campbell adequately states a cause of action for unlawful retaliation under the NYSHRL and the NYCHRL. Despite defendants' contentions, Campbell's amended complaint contains factual allegations sufficient to support her claims. As to whether Campbell engaged in

155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC
Motion No. 004

Page 15 of 33

15 of 33

a protected activity and whether the defendants knew about said activity, the amended complaint alleged that Campbell made several reports regarding sex-based discrimination and harassment (*see Sorrentino*, 265 AD2d at 245). Campbell additionally alleges that she reported Buccio's conduct to nonparty coordinating producer Seperson and to nonparty SI senior producer of video strategy Mantzouranis after the January 9, 2020 incident (NYSCEF Doc No. 25 at ¶ 46). According to the amended complaint, Seperson and Mantzouranis informed the human resources department and Iannuzzi about the report (*id.*). Campbell alleges that she also reported the incidents to Larkin and told Larkin she feared retaliation (*id.* at ¶¶ 48 & 51). Campbell alleges upon information and belief that Maven's director of human resources, Larkin, informed Ianuzzi, Heckman, and Levinsohn about the reports (*id.* at ¶ 73). Campbell alleges that in late January, Seperson told her about conversations involving the "higher-ups," wherein they discussed how to handle Campbell's report (*id.* at ¶ 82). Campbell also claims that Seperson warned her that Iannuzzi was on the calls, disparaging Campbell and supporting Buccio (*id.*). Campbell alleges she understood the "higher-ups" to include Heckman, Levinsohn, Iannuzzi, and Larkin (*id.* at ¶ 83).

Defendants argue the allegations that the individual defendants knew about Campbell's reports are impermissibly made upon information and belief. However, "dismissal is not required at the pleading stage where allegations made 'upon information and belief' can be ascertained through discovery" (*Gibson v 526 W. 158th St. Hous. Dev. Fund Corp.*, 221 AD3d 455, 455-456 [1st Dept 2023], citing *Harris v Structuretech N.Y., Inc.*, 191 AD3d 470, 471 [1st Dept 2021]). Campbell's claims that the individual defendants participated in conversations discussing the handling of her discrimination reports are factual allegations that can be determined through discovery.

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 16 of 33**

16 of 33

Additionally, since Campbell was not privy to communications between Seperson and the "higher-ups", she is "not necessarily expected, before disclosure, to make more specific allegations regarding defendants' knowledge" (*Artis v Random House, Inc.*, 34 Misc 3d 858, 865 [Sup Ct, NY County 2011]; *see Krause v Lancer & Loader Group, LLC*, 40 Misc 3d 385, 395 [Sup Ct, NY County 2013]). Because "[t]he function of a liberal notice pleading standard is precisely to permit an opportunity for such disclosure" (*Artis*, 34 Misc 3d at 866, citing *Mohammad v Board of Mgrs. of 50 E. 72nd St. Condominium*, 262 AD2d 76 [1st Dept 1999]), Campbell's amended complaint adequately pleads that she engaged in protected activity and that defendants knew about such activity.

Campbell also sufficiently pled that she suffered an adverse employment action and that defendants took an employment action that disadvantaged her. According to the amended complaint, Campbell, along with Rozwadowski, were the only members of the SI NOW team to whom Maven did not extend offers of employment and were subsequently terminated after reporting alleged discriminatory conduct (NYSCEF Doc No. 25, amended complaint at ¶ 85).

Finally, Campbell adequately alleged a causal connection between the protected activity and the adverse action, which may be inferred from the temporal proximity between the incidents. Here, less than two months passed between the first incident, the several reports of discrimination, the conversations with the "higher-ups," and Campbell's termination (NYSCEF Doc No. 25, amended complaint at ¶¶ 51, 55, 64, 69-74, 82, 85, & 87).

Since defendants have not moved to dismiss Campbell's third cause of action for retaliation against defendant Maven, this Court need not test the sufficiency of her NYSHRL retaliation claims against Maven. However, defendants move herein to dismiss the fourth cause of action for retaliation in violation of the NYCHRL as against Maven. Campbell has sufficiently

155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC
Motion No. 004

Page 17 of 33

[* 17]

17 of 33

stated a cause of action for retaliation against Maven pursuant to the NYCHRL because, under the statute, Maven is subject to liability for the unlawful retaliatory conduct of an employee (*see, e.g.*, *Sandiford v City of N.Y. Dept. of Educ.*, 22 NY3d 914, 915 [2013]; *Boliak v Reilly*, 161 AD3d 625, 626 [1st Dept 2018]).

Campbell has adequately pled a retaliation cause of action against the individual defendants. The amended complaint claims that Larkin, who allegedly believed that Campbell's sex-based discrimination reports were not concerning (NYSCEF Doc No. 25, amended complaint at ¶ 66), subsequently handled her discrimination and harassment report (*id.* at ¶¶ 69-73) and was part of the conversations regarding what to do about her complaints (*id.* at ¶ 82). Campbell alleges that Iannuzzi was involved in every single decision at the studio (*id.* at ¶ 30), lobbied to ignore Campbell's complaints due to her friendship with Buccio (*id.* at ¶ 74), and participated in the conversations with the higher-ups, allegedly disparaging Campbell (*id.* at ¶ 82). The amended complaint alleges that Heckman and Levinsohn, who had hiring and firing authority (*id.* at ¶¶ 28 & 68) and had previously laid off staff and hired new managers (*id.* at ¶ 28), participated in phone calls and emails addressing plaintiff's reports and what would happen next (*id.* at ¶¶ 81-83). Contrary to defendants' assertions, Heckman and Levinsohn are not exempt from potential liability for retaliatory conduct under the NYCHRL simply because of their status as senior executives. *Doe v Bloomberg* does not bar an action against officers, where the officers engaged in retaliatory conduct (*Doe*, 36 NY3d at 459).

The amended complaint has adequately pled that Larkin, Iannuzzi, Heckman, and Levinsohn, all of whom allegedly knew about Campbell's protected activity (*id.* at ¶¶ 64, 73, & 81-83, & 87), participated in the decision-making process regarding Campbell's reports shortly before Campbell was terminated (*id.* at ¶¶ 81-83). For the forgoing reasons, at this stage of

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
Motion No. 004

Page 18 of 33

18 of 33

litigation, Campbell has sufficiently pled that Larkin, Iannuzzi, Levinsohn, Heckman, and Maven, as their employer, engaged in unlawful retaliatory conduct to maintain this action.

Moreover, at this stage of the proceeding, Campbell has adequately pled a cause of action for retaliation against Buccio. Under the liberal standard of the NYCHRL and the amended NYSHRL, plaintiff need not demonstrate an adverse employment action. However, plaintiff is required "to show something that happened that was reasonably likely to deter a person from engaging in protected activity" (*McHenry v Fox News Network, LLC*, 510 F Supp3d 51, 67 [SDNY 2020]). [internal quotation and citation omitted]). The amended complaint alleges that on January 2, 2020, Buccio exerted power over plaintiff by ordering that the hair and make-up unit fix plaintiff's hair and by discussing plaintiff's appearance in front of her (*id*. at ¶ 46).[3]

Plaintiff approached Rozwadowski to inform him of Buccio's behavior, and thereafter both she and Rozwadowski confronted Buccio and told him that "his focus on plaintiff's appearance was offensive" (*id*. at ¶ ¶ 50-51). The amended complaint alleges that in response, "Buccio exploded and belligerently screamed at Rozwadowski and [p]laintiff in front of the entire newsroom: 'I am the director! I run the studio! And if I want hair and makeup to stand on set all day, she will stand there all day! She is paid to be here, and I am the boss. If I say she has to be here she has to be here" (*id*. at ¶ 53). Plaintiff alleges she became fearful of Boccio's rage toward her (*id*. at ¶ 54).

Rozwadowski and plaintiff then spoke with Seperson who "confirmed that they (Rozwadowski and plaintiff) had handled the situation properly" (*id*. at ¶ 55). The amended complaint alleges that on or about January 6, 2020, Rozwadowski told plaintiff that he had

---

[3] Buccio allegedly repeated this behavior and escorted a hair and make-up stylist to plaintiff even though plaintiff had refused to have her hair fixed (*id*. at ¶ 49).

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 19 of 33**

reported Buccio's harassing conduct toward plaintiff to a manager and filed a written complaint which was forwarded to human resources (*id.* at ¶ 56).

The amended complaint also alleges that on January 9, 2020, Buccio demonstrated his power over plaintiff by inch[ing] slowly into her personal space and [running] his hand through her hair while looking into her eyes" (*id.* at ¶ 58). Plaintiff alleges that he engaged in such conduct "because his previous behavior had been reported and he wanted [p]laintiff to know that [d]efendant Maven would not protect her, and in fact, he could say or do whatever he wanted to [plaintiff] because [d]efendant Maven would protect him" (*id.* at ¶ 59). After this incident, plaintiff alleges that she had limited access to studios and that it would be more difficult to earn money and "produce content" (*id.* at ¶ 63).

The amended complaint further alleges that on January 13, 2020, plaintiff spoke to two senior managers about Buccio's conduct and said managers along with Iannuzzi (Maven's vice president of video) "reached out" to human resources (*id.* at ¶ 64). At that point, plaintiff was told not to work with Buccio at a studio owned by Maven (*id.*). Thereafter, plaintiff herself went to human resources directly to report Buccio's discriminatory behavior and to express her concern about retaliation (*id.* at 69). Plaintiff alleges that she complained directly to HR after Rozwadowski told her that on January 14, 2020, Larkin questioned Rozwadowski as to why plaintiff never filed a direct report to HR about Buccio's conduct (*id.* at ¶ 66). Around that time, plaintiff was told that she would have to work alongside Buccio but that Buccio "had been instructed to maintain a 'safe and comfortable distance' from her and that they would not be working together on any more shoots" (*id.* at ¶¶ 69-70).[4]

---

[4] Larkin allegedly told plaintiff that there had been an investigation but that no disciplinary action would be taken against Buccio (*id.* at ¶ 69).

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 20 of 33**

Plaintiff was concerned and feared retaliation from Buccio but was told by Larkin that the reports made against Buccio were confidential (*id.* at ¶ 72). However, plaintiff alleges that these complaints could not be kept confidential if Buccio was in fact told to maintain a safe distance from her (*id.*). Furthermore, when plaintiff and Buccio subsequently worked in the same studio space, plaintiff alleges that Buccio barged into plaintiff's makeup room only because he knew plaintiff was there and scolded a hair and makeup stylist about another employee's hair (which he allegedly had never done before) in retaliation against plaintiff for reporting him (*id.* at ¶¶ 77-79).

Here, plaintiff has alleged several protected activities including (i) plaintiff's report to Rozwadowski about Buccio's discriminatory behavior that he exhibited on January 2, 2020 (*id.* at ¶¶ 50-51); (ii) plaintiff and Rozwadowski's report of the incident to coordinating producer nonparty Seperson sometime after January 2, 2020 (*id.* at ¶ 55); (iii) Rozwadowski's report of the incident to a manager who forwarded the complaint to human resources on January 6, 2020 (*id.* at ¶ 56); (iv) plaintiff's report on January 13, 2020 of Buccio's conduct to two managers (*id.* at ¶ 64); and (v) plaintiff's report on or after January 14, 2020 to Larkin directly about Buccio's discrimination and retaliation (*id.* at ¶¶ 69).

Here, it is reasonable to infer from the amended complaint that Buccio must have known about the complaints as he was told to keep a safe distance from plaintiff. The amended complaint alleges harassing behavior by Buccio as against plaintiff occurring after complaints were made. At this stage in the proceeding, Buccio's conduct could be "reasonably likely to deter a person from engaging in protected activity". Furthermore, "[v]erbal attacks alone can meet this standard" (*McHenry*, 510 FSupp at 72; *see Mihalik v Credit Agricole Cheuvreux North America*, 715 F3d 102, 116 [2d Cir 2013] ["keeping in mind 'workplace realities' and 'the fact

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 21 of 33**

21 of 33

that the chilling effect of particular conduct is context dependent,' a jury could reasonably find that publicly humiliating [plaintiff] in front of her male counterparts and otherwise shunning her was likely to deter a reasonable person from opposing his harassing behavior in the future"]). Finally, the amended complaint sufficiently pleads at this stage a causal nexus between Buccio's actions toward plaintiff and plaintiff's protected activity. At the very least, the allegedly harassing conduct exhibited by Buccio occurred in close proximity to the various complaints made by both Rozwadowski and plaintiff about Buccio. As such, defendants' motion to dismiss the third and fourth causes of action for retaliation in violation of the NYCHRL and the NYSHRL as against the individual defendants is denied.

### Campbell's Sex-based Discrimination and Hostile Work Environment Claims

Defendants argue that Campbell's sex-based discrimination and hostile work environment claims pursuant to the NYSHRL and NYCHRL should be dismissed against all defendants because she failed to sufficiently plead that the alleged discriminatory conduct was based on her protected status or that she experienced any harassment beyond petty slights or trivial inconveniences. Defendants insist that Campbell's claims are conclusory and insufficient to state a discrimination cause of action.

Defendants also seek dismissal of Campbell's claims against the individual defendants because Campbell has not alleged that each individual defendant engaged in the alleged discriminatory acts. Moreover, defendants argue that the individual defendants are not liable under an aider-and-abettor theory of liability because they cannot be held liable for aiding-and-abetting their own conduct absent employer liability or the liability of another individual, where Campbell has not sufficiently pled facts that would render any of the defendants liable under the NYSHRL or NYCHRL.

**155160/2020  CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 22 of 33**

22 of 33

[* 22]

Campbell counters that her claims accrued after the 2019 amendments to the NYSHRL; thus, the standard for setting forth a sex-based discrimination cause of action under a hostile work environment theory of discrimination is the liberal standard applied under the NYCHRL, which only requires that she demonstrate that she was treated less well than other employees based on her gender. In any case, Campbell insists that she has set forth a prima facie case of discrimination, which defendants failed to rebut with a legitimate, non-discriminatory reason for her termination. Campbell urges this Court to look at the totality of circumstances to determine that the individual defendants engaged in discriminatory conduct and created a hostile work environment and that they also aided-and-abetted the discriminatory conduct against her.

i.      *NYSHRL discrimination and hostile work environment claims*

The NYSHRL "make[s] it unlawful for an employer . . . to discriminate against an individual in compensation or in terms, conditions, or privileges of employment because of that person's sex/gender" (*Ayers v Bloomberg, L.P.*, 203 AD3d 872, 873-874 [2d Dept 2022], citing Executive Law § 296 [1] [a]). When alleging discrimination in employment under the NYSHRL,

> "[a] plaintiff . . . must establish that (1) she or he is a member of a protected class, (2) she or he was qualified to hold the position, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination (*id.* at 874 [citations omitted]).

To establish a discrimination cause of action under a sexual harassment/hostile work environment theory, a plaintiff must demonstrate that the plaintiff was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership" in a protected category (*Elco v Aguiar*, 226 AD3d 649, 651 [2d Dept 2024]; *see also Golston-Green*, 184 AD3d at 41 n 3 "[The NYSHRL] was amended to provide that harassment is actionable 'regardless of whether such harassment would be considered severe or pervasive under precedent

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 23 of 33**

[* 23]

23 of 33

applied to harassment claims,' and the plaintiff need demonstrate only that she or he was subjected to 'inferior terms, conditions or privileges of employment'," (citing Executive Law § 296 [1] [h])).

### ii. Analysis

Campbell has sufficiently pled a discrimination cause of action under a hostile work environment theory pursuant to the NYSHRL since she alleges that she was subjected to inferior terms, conditions, or privileges of employment because of her sex. Specifically, she alleges that Buccio did not humiliate male on-air hosts based on their appearance (NYSCEF Doc No. 25, amended complaint at ¶¶ 46-54). Campbell also alleges that "Buccio sought again to demonstrate his power over [her] because she is a woman" when he touched her hair (*id.* at ¶ 55). Campbell claims that this incident made her extremely upset, uncomfortable, and fearful (*id.* at ¶¶ 58, 59). Campbell alleges that after she reported these incidents, her access to the studio was limited, which made it harder for her to earn money (*id.* at ¶ 63) and that she lost work opportunities (*id.* at ¶ 76) (*see Demir v Sandoz Inc.*, 155 AD3d 464, 465 [1st Dept 2017]). Further, she pleads that Buccio was not disciplined (NYSCEF Doc No. 25 at ¶ 69) but instead, she was terminated because of her reports (*id.* at ¶ 69, 76, 80 & 87) (*see Elco*, 226 AD3d at 698-699). Thus, Campbell has sufficiently stated facts that could support a finding of a hostile work environment under the amended NYSHRL.

Although defendants urge this Court to dismiss Campbell's amended complaint because she failed to allege that any action was taken against her because of her sex, an employer may be held liable for the actions of employees under the NYSHRL, "where the employer became a party to [the discriminatory conduct] by encouraging, condoning, or approving it" (*Matter of Medical Express Ambulance Corp. v Kirkland*, 79 AD3d 886, 887 [2d Dept 2010], *lv denied* 17

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 24 of 33**

[* 24]

24 of 33

NY3d 716 [2011] [citations omitted]; *see also Sukram v Anjost Corp.*, 72 AD3d 491, 491 [1st Dept 2010]; *Clayton v Best Buy Co., Inc.*, 48 AD3d 277, 277 [1st Dept 2008]). It is well settled that "an employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation, [but] condonation contemplates a knowing, after-the-fact forgiveness or acceptance of an offense" (*Matter of Medical Express Ambulance Corp.*, 79 AD3d at 887 [internal quotation marks and citations omitted]).

Here, Campbell adequately pleads that she repeatedly complained to her supervisors about Buccio's alleged discriminatory conduct (NYSCEF Doc No. 25, amended complaint at ¶¶ 55, 64, & 80), but despite her repeated complaints, Maven did not discipline Buccio (*id.* at ¶¶ 55, 64, 69, & 80). Thus, Maven may be held liable for Buccio's actions under the NYSHRL (*see Mitchell v TAM Equities, Inc.*, 27 AD3d 703, 705-706 [2d Dept 2006] [finding that defendant bank acquiesced in or condoned the discriminatory conduct of plaintiff's coworkers and was thus liable for creating a hostile work environment under the NYSHRL, where plaintiff repeatedly complained to her supervisors about the offending conduct, but the conduct went unaddressed]; *see also Feingold v New York*, 366 F3d 138, 152 [2d Cir 2004]).

Although Buccio is not an employer within the meaning of NYSHRL, under the NYSHRL, suits may also be maintained against a co-employee under an aider-and-abettor liability theory (Executive Law § 296 [6]). Where there is an aider-and-abettor claim,

> "[i]t is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting. Moreover, in order for aider-and-abettor liability to be established, the defendant must be found to have actually participated in the conduct giving rise to the claim of discrimination" (*Black*, 70 Misc 3d 1217[A] at *4 [internal quotation marks and citation omitted]; *see also Russell v New York Univ.*, 42 NY3d 377 [2024]).

Here, Campbell sufficiently pled facts to state a cause of action against Maven. Thus, Campbell is not precluded from maintaining a cause of action against Buccio for his alleged

**155160/2020 CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 25 of 33**

[* 25]

25 of 33

discriminatory conduct pursuant to the NYSHRL under an aider-and-abettor theory of liability (*see Doe v Benjamin Zaremski M.D., P.C.*, 2022 WL 2966041, *7, 2022 US Dist LEXIS 133662, *18 [SD NY, July 27, 2022, No. 21 Civ 3187, Ramos, D.J.]; *Maher v Alliance. Mtge. Banking Corp.*, 650 F Supp 2d 249, 262 [ED NY 2009] ["[A]n individual may be liable under § 296 (6) for aiding and abetting an unlawful discriminatory practice of his employer even where his conduct serves as the sole predicate for the employer's liability"]).

Campbell has alleged sufficient facts to state a claim against Iannuzzi under an aider-and-abettor theory of liability. Campbell adequately pleads that Iannuzzi aided-and-abetted Maven, where the amended complaint alleges that Iannuzzi, who was particularly friendly with Buccio (NYSCEF Doc No. 25, amended complaint at ¶ 34), upon information and belief, lobbied to ignore Campbell's reports (*id.*), "argued that they should not be taken seriously, and that [Buccio] should not be disciplined" (*id.*). Moreover, Campbell alleges that Iannuzzi was on phone calls with the "higher-ups" vouching for Buccio and disparaging Campbell (*id.* at ¶ 82) (*see Ajoku v New York State Off. of Temporary & Disability Assistance*, 198 AD3d 437, 438 [1st Dept 2021], *lv denied* 38 NY3d 908 [2022]).

Campbell, however, has not successfully pled a cause of action for sex-based discrimination against Larkin, Heckman, or Levinsohn. The complaint is devoid of allegations that Heckman and Levinsohn acted in a discriminatory manner toward Campbell based on sex or gender. Further, Campbell's allegations do not state sufficient facts to support a finding of aider-and-abettor liability, where she has not alleged that Larkin, Heckman, or Levinsohn actually participated in the discriminatory sex-based conduct at the core of Campbell's NYSHRL discrimination claim (*Rivas*, 83 Misc 3d 1289[A], 2024 NY Slip Op 51253[U], *7; *see Jews for Jesus v Jewish Community Relations Council of N.Y., Inc.*, 79 NY2d 227, 234 [1992]) or that any

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 26 of 33**

[* 26]

26 of 33

of these defendants aided-and-abetted Maven in its alleged failure to discipline Buccio. For the foregoing reasons, Campbell's first cause of action is dismissed against Larkin, Heckman, and Levinsohn only.

     *v.*     *Campbell's NYCHRL discrimination and hostile work environment claims*

Under the NYCHRL, it is unlawful, "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" (Administrative Code § 8–107 [1] [a] [3]). The NYCHRL does not require a plaintiff to "establish that she or he was subjected to a 'materially adverse' change to terms and conditions of employment, but only that she or he was subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" (*Golston-Green*, 184 AD3d at 38). In *Williams*, the First Department recognized that accomplishing the broader purpose of the NYCHRL did not mean that the law must operate as a general civility code (*Williams*, 61 AD3d 62, at 79). As such, the Court reserved an affirmative defense, "whereby defendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences'" (*id.* at 80).

As relevant here, an employer is liable for discrimination under the NYCHRL "based upon the conduct of an employee or agent . . . only where . . . [t]he employee . . . exercised managerial or supervisory responsibility" (Administrative Code § 8–107 [13] [b] [1]). The Court of Appeals held in *Russell* that "[a]s required by the statute's liberal rule of construction, we construe . . . [the language of the NYCHRL] broadly, to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 27 of 33**

27 of 33

[* 27]

dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment" (*Russell*, 42 NY3d at 389-390).

Under the NYCHRL, the standard for a hostile work environment claim is the same as that of any sex-based discrimination claim under the statute (*Benitez v Jamaica Hosp. Med. Ctr.*, 230 AD3d 1284, 2024 NY Slip Op 04539, *2 [2d Dept 2024]; *see Suri v Grey Global Group, Inc.*, 164 AD3d 108, 115 [1st Dept 2018], *appeal dismissed* 32 NY3d 1138 [2019]). The plaintiff only needs to establish "that he or she was treated less well than other employees because of the relevant characteristic" (*Benitez*, 230 AD3d at 1285 [citations omitted]).

*vii.     Analysis*

Campbell has sufficiently stated a cause of action for sex-based discrimination against Maven and Buccio pursuant to the NYCHRL. As discussed above, Campbell sufficiently alleges that Buccio did not humiliate male employees about their appearance or order them to change their physical appearance (NYSCEF Doc No. 25, amended complaint at ¶ 48). Campbell additionally alleges that Buccio touched her hair to assert power over her as a woman (*id.* at ¶ 58). Campbell alleges that because she made the reports, she lost work opportunities (*id.* at ¶¶ 63 & 76) and was ultimately one of only two members of her team who was terminated (the other being Rozwadowski, who also reported the alleged discriminatory conduct) (*id.* at ¶¶ 85 & 87). Based on these allegations, Campbell has adequately stated a claim for discrimination under the NYCHRL because she pleads that she experienced an unfavorable change and was treated less well than other employees on the basis of her sex or gender.

Buccio indicated that he was the director, ran the studio, and was the "boss" (NYSCEF Doc No. 25, amended complaint at ¶ 53). Defendants do not dispute these allegations or claim that Buccio's statements were inaccurate. Because the NYCHRL is applicable to those

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 28 of 33**

[* 28]

28 of 33

employees who wield any ability to dictate the terms or conditions of a plaintiff's employment, Campbell has sufficiently stated a claim for sex-based discrimination against Buccio. Further, Maven may be held liable under the NYCHRL since Buccio was its employee and exercised at least some supervisory responsibility over Campbell (*see* Administrative Code § 8–107 [13] [b] [1]).

Defendants' assertions that this was merely a workplace dispute and constitutes petty slights and trivial inconveniences are premature at this pre-answer stage of litigation (*Kaplan v New York City Dept. of Health and Mental Hygiene*, 142 AD3d 1050, 1051 [2d Dept 2016] ["[A] contention that the behavior was a petty slight or trivial inconvenience constitutes an affirmative defense"], citing *Williams*, 61 AD3d at 80). Thus, affording the amended complaint a liberal construction and allowing Campbell the benefit of every favorable inference (*see Sokol v Leader*, 74 AD3d 1180, 1181 [2d Dept 2010]), Campbell has stated a cause of action alleging sex-based discrimination pursuant to the NYCHRL.

Campbell failed to state a cause of action for sex discrimination against Larkin, Heckman, and Levinsohn under the NYCHRL because she has not adequately pled that they treated her less well than other employees because of her sex or gender. Moreover, under the NYCHRL, the aiding and abetting section is essentially the same as under the NYSHRL and makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [Administrative Code § 8–107]" (Administrative Code § 8–107 [6]). Campbell failed to plead that these individual defendants aided-and-abetted Maven or Buccio in conduct motivated by discriminatory animus. For the foregoing reasons, Campbell's second cause of action is dismissed against Larkin, Heckman, and Levinsohn only.

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

Page 29 of 33

However, Campbell has stated a claim against Iannuzzi under an aider-and-abettor theory for the reasons stated in the discussion of individual defendant liability pursuant to the NYSHRL above.

### Campbell's Pay Equity Claims

i.      *Liability for unequal wages under the EPA and NYEPA*

Defendants argue that Campbell has not pled facts outlining her job duties and responsibilities, but has merely alleged, in conclusory fashion, that her position and Lundberg's position involved substantially equivalent work pursuant to the Equal Pay Act (EPA) and Labor Law § 194 [1] (NYEPA). Campbell counters that she has sufficiently pled that she was paid a lower wage than her male co-host for performing equal work as a co-host of SI NOW, which required equal skill, effort, responsibility, and performance under similar working conditions and under the same supervisor.

The federal EPA "prohibits pay discrimination on the basis of sex" (*Eisenhauer v Culinary Inst. of Am.*, 84 F4th 507, 515 [2d Cir 2023]). Under the EPA

> "[n]o employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which [it] pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions" (*id.,* citing 29 USC § 206 [d] [1]).

Similarly, to state a claim under the NYEPA, as relevant here, the plaintiff must allege that "(1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." (*Wu v Good Samaritan Hosp. Med. Ctr.*, 815 Fed Appx 575, 580-81 [2d Cir 2020] [citation omitted]; Labor Law § 194 [1]).

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 30 of 33**

[* 30]

30 of 33

Under the EPA and the NYEPA, "'equal work' has been interpreted to mean that the jobs must be substantially equal; [but] they need not be identical" (*Kent v Papert Cos., Inc.*, 309 AD2d 234, 246 [1st Dept 2003] [citation omitted]). The federal EPA requires that "[a]t the pleading stage . . . a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal'" (*E.E.O.C. v Port Auth. of N.Y. & N.J.*, 768 F3d 247, 256 [2d Cir 2014] [citations omitted] [emphasis in original]). Similarly, under the NYEPA, "[a]llegations that merely mirror the statutory language are insufficient to allege an unequal pay claim (*Torres v Vittoria Corp.*, 2008 NY Slip Op 32072[U], *16 [Sup Ct, NY County 2008], citing *Kent,* 309 AD2d at 234]). As such, a "bald recitation of the elements of an EPA claim" is not sufficient (*E.E.O.C.*, 768 F3d at 256 [finding allegations that the defendant paid its female attorneys less than its male attorneys insufficient to support a claim under the EPA, where plaintiffs alleged the attorneys performed "substantially equal work," had "the same job code," and that the pay differential could only be attributed to sex"]; *see Wu*, 815 Fed Appx at 581 ["Plaintiff . . . has not alleged anything about her actual job duties or the actual job duties of her putative comparators. Accordingly, her allegations fall short of the pleading standard we impose on EPA claims."]).[5]

Here, the amended complaint states a cause of action under the EPA and NYEPA. Campbell alleges that she and Lundberg performed substantially equivalent work (NYSCEF Doc No. 25, amended complaint at ¶ 17) under similar working conditions as they were both co-hosts of SI NOW, a daily live sports show (*id.* at ¶ 13). Campbell pleads that despite this, upon

---

[5] Traditionally the courts have evaluated the EPA and the NYEPA under the same standard (*Eisenhauer*, 84 F4th 507 at 525). Although the NYEPA was amended in 2016 to add a job-relatedness requirement to its "*bona fide* factor other than sex" defense, this Court recently held that "[d]espite this difference, '[a]n equal pay claim under New York Labor Law § 194 is analyzed under the same standards applicable to the federal Equal Pay Act'" (*Manta v Hofstra Univ.*, 2024 NY Slip Op 33915[U], *13-14 [Sup Ct, NY County 2024], citing *Wu*, 815 Fed Appx 575 at 580 n. 5).

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No. 004**

**Page 31 of 33**

information and belief, Lundberg was compensated at a rate of $500 per day while plaintiff was only compensated at a rate of $400 per day (*id.* at ¶¶ 13, 15). Moreover, Campbell pleads that she had previously reported the pay differential as discrimination because they performed the exact same job (*id.* at ¶ 18). These allegations are sufficient to state a cause of action for unequal pay (*see Santiago v ACACIA Network, Inc.* 634 F.Supp.3d 143, 155 [SD NY 2022] [female plaintiff adequately stated a claim for pay discrimination by pointing to a similarly situated male comparator who was paid more than she was for doing the same job under similar working conditions]). For the foregoing reasons, the motion to dismiss Campbell's fifth and sixth causes of action for unequal pay in violation of the federal EPA and NYEPA is denied.

## CONCLUSION

Accordingly, it is hereby

ORDERED that the motion of defendant Authentic Brands Group LLC to dismiss the complaint is granted and the complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further

ORDERED that the caption be amended to reflect the dismissal of Authentic Brands Group LLC and that all future papers filed with the court bear the amended caption; and it is further

ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-

155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC
Motion No. 004

Page 32 of 33

32 of 33

[* 32]

Filing" page on the court's website); and it is further

ORDERED that the motion to dismiss is granted to the extent that the first and second causes of action of the complaint are dismissed against Larkin, Heckman, and Levinsohn; and it is further

ORDERED that the motion to dismiss is otherwise denied; and it is further

ORDERED that remaining defendants are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further

ORDERED that the action is severed and continued against the remaining defendants.

January 15, 2025
**DATE**

SHLOMO S. HAGLER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155160/2020   CAMPBELL, AMY LILLIAN vs. AUTHENTIC BRANDS GROUP LLC**
**Motion No.  004**

**Page 33 of 33**

33 of 33